**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENEKEI LAWSON and | : | |
| JAMES HINES, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.  13-7403 |
| PENNSYLVANIA SPCA, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                August 19, 2015

Currently pending before the Court is the Motion for Summary Judgment by Defendants

Pennsylvania SPCA, Richard Loos, Gregory Jordan, George Bengal, Wayne Smith, Leonard

Knox, and Jason Martinez (collectively, "Defendants") as to all federal and state law claims

asserted by Plaintiffs Denekei Lawson and James Hines (collectively, "Plaintiffs").  For the

following reasons, Defendants' Motion for Summary Judgment is granted in part and denied in

part.

## I.      FACTUAL HISTORY[1]

Defendant Pennsylvania SPCA ("PSPCA") is a Pennsylvania non-profit corporation

empowered to enforce Pennsylvania law pertaining to the prevention of cruelty to animals

---

[1] **The statement of facts is compiled from a review of the parties' statements of undisputed and disputed material facts, briefs, and the evidence submitted in conjunction with those briefs.  To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.  Similarly, where Plaintiffs cite to their Complaint in support of a fact, the Court does not include it in the recitation of facts.  See, e.g., Black v. City of Reading, No. Civ.A.04-5007, 2006 WL 964118, at \*3 (E.D. Pa. Apr. 10, 2006) ("A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor.") (citations omitted).**

through its Humane Society officers.  (Defs.' Mem. Supp. Mot. Summ. J. 1.)  All of the

individually-named Defendants were employed by PSPCA at all times relevant to this case.  (Id.)

Plaintiffs Denekei Lawson and James Hines resided together at 4824 North 8th Street in

Philadelphia, Pennsylvania.  (Id.; Defs.' Statement of Material Undisputed Facts ("DSUMF") ¶

1.)[2]  The only name on the lease for that property was Denekei Lawson.  (Id.)  The PSPCA had

received numerous complaints regarding the dogs at that address.  (Id. ¶ 2; Ex. C, PSPCA Case

View Notes.)  The property is a 1350 square foot row house, which was inhabited by eight

people, twenty-five dogs, two cats, and a parrot.  (Id. ¶¶ 6–7; Ex. F, Deposition of James Hines,

Feb. 3, 2015 ("Hines Dep.") 42:15–24, 46; Ex. G, Inventory Sheet for dogs removed from

property; Ex. B, Deposition of Denekei Lawson, Sept. 18, 2014 ("Lawson Dep.") at 27.)

On December 22, 2011, a PSPCA representative bought a dog from Plaintiff Hines, which

Defendants assert had been vaccinated by Plaintiff Hines.  (Id. ¶¶ 3–4, Ex. D, Receipt for dog

purchase.)  According to an employment experience form filled out by Plaintiff Hines, he ran

"James' Kennels" out of 4824 North 8th Street, and "administer[ed] vaccines" as part of his work

responsibilities.  (DSUMF ¶ 5; Ex. E.)  Plaintiffs contest Defendants' assertion that Hines was

the one who vaccinated the dog.  (Pls.' Resp. Opp'n Mot. Summ. J. 5.)[3]

After Defendant Loos bought the puppy from Plaintiff Hines, a veterinarian examined the

puppy and found that "[t]he puppy's face was extremely swollen to the point that you couldn't

---

[2] Plaintiffs object to some of the facts that Defendants included in their Statement of Undisputed Material Facts as not relevant.  The Court notes Plaintiffs' objections but in most instances does not agree with Plaintiffs' view of "relevance," given the number and variety of claims at issue in this case.

[3] Plaintiffs did not number the pages of their Response in Opposition, so the Court has supplied the numbering.

see the eyes.  It was painful on palpation in that area, and once we took radiographs you could see the puppy's arch and cheek boon [sic] was fractured."  (Defs.' Mot. Summ. J., Ex. J, Suppression Hearing Transcript, Apr. 8, 2013, 23:23–24:3.)  Defendants believed Plaintiffs caused the puppy's injury, while Plaintiffs maintain that Defendant Loos caused the puppy's injury.  In the Affidavit of Probable Cause attached to the search warrant at issue in this case, Defendant Loos affirmed that at the time he obtained the puppy it "appeared to have an injury to its right eye.  The eye appeared to be sunken and the area around the eye was swollen.  There were also two open sores around said eye."  (Defs.' Mot. Summ. J., Ex. I, Dec. 22, 2011 Search Warrant and Affidavit of Probable Cause.)  Plaintiff Hines testified at his deposition that he saw the man who put the dog in the car "[e]lbowing the dog, making him sit back" and that "[w]hen they bought the dog off me, the dog was fine.  No marks on his face at all.  None.  None at all.  If there are any marks on the dogs, didn't put those marks on them.  I saw what those guys were doing to the dog in the car."[4]  (Hines Dep. 84:12–18.)

At all times material to the Complaint, Plaintiff Hines did not have a kennel license issued by the Commonwealth of Pennsylvania, nor did he have any type of similar permission from the City of Philadelphia.  (DSUMF ¶ 8; Ex. L, Deposition of Nicole Wilson, Apr. 21, 2015 ("Wilson Dep."), 26:15–27:16.)[5]  The City of Philadelphia does not permit a person to have more than

---

[4] In their brief, Plaintiffs assert that after Defendant Loos bought the puppy from Plaintiff Hines and placed it in the back seat of his car, Plaintiff Hines "observed the dog lean his head into the front seat area of the unmarked vehicle whereupon Defendant, PSPCA Officer Loos, punched the dog in the face."  (Pls.' Resp. Opp'n Mot. Summ. J. 5 (citing Ex. J, Deposition of James Hines, Feb. 3, 2015 ("Hines Dep."), 84:1–18).)   In fact, Plaintiff Hines testified at his deposition as follows:  "The dog kept trying to come up on the front of the seat.  Guess what the guy was doing to the dog?  Q: What?  A: Elbowing the dog, making him sit back."  (Hines Dep., 84:7–12.)  There is no testimony in the cited transcript excerpt stating that Plaintiff Hines saw Defendant Loos punch a dog in the face.

[5] Plaintiffs assert that a kennel license is not required unless someone has more than twenty-five dogs.  (Pls.' Resp. Opp'n Mot. Summ. J. 6 (citing Wilson Dep. at 22:17–19).)  Defendants assert that Pennsylvania requires a license for anyone who keeps more than twenty-five animals in a

twelve dogs without a kennel license, of which no more than two may be unsterilized.  (Id. ¶ 9 (citing Philadelphia Ordinance § 10-103.5).)  Without a kennel license, an individual is not permitted to administer vaccines.  (Id. ¶ 11 (citing Pennsylvania Code Chapter 16, § 16.42).)

That same day, PSPCA officers obtained a search warrant for 4824 North 8th Street, which was approved and signed at 8:30 p.m.  (Pls.' Resp. Opp'n Mot. Summ. J. 10; Ex. B, Search Warrant.)  The facts relating to the subsequent search are in dispute, including which Defendant was where at what time, whether Plaintiffs were present, and the circumstances of the search itself.[6]  Plaintiffs maintain that the search began at 8:00 p.m., based on both the time written on the inventory of property seized from that location and Defendant Loos' testimony at a subsequent suppression hearing.  (See id. at 3, 8, 10–11; Ex. E, Suppression Hearing Transcript. at 13–15; Ex. F, Inventory sheet.)  Defendants maintain that the time on the inventory is an administrative typo, that even though some officers were present at the scene they did not enter the home before the warrant had been obtained, and that the search did not begin until after the warrant was signed.  (See Defs.' Reply 4–5 (quoting Pls. Resp. Opp'n Mot. Summ. J. Ex. H, Deposition of Richard Loos, Apr. 20, 2015 ("Loos Dep."), 11:8–12:35); DSUMF ¶¶ 16–17.) Defendants assert that the dogs were being kept in the conditions depicted in photographs taken on December 22, 2011.[7]  (See Defs.' Mot. Summ. J., Ex. H.)

residence, such as Plaintiffs who had twenty-six animals, and that Philadelphia requires a special license or exception for someone who has more than four intact animals or more than twelve spayed or neutered animals.  (Defs.' Reply 2–3 (citing Wilson Dep. at 22:6–23:1).)

[6] Plaintiffs also assert that Defendants unlawfully wrote the words "Merry Christmas" on the official search warrant.  (See Pls.' Resp. Opp'n Mot. Summ. J. 2 n.1; Ex. B, Search Warrant.)

[7] Plaintiffs assert that "[t]his fact is not relevant in whether or not Defendants, PSPCA Officers, entered the house without exigent circumstances prior to obtaining a valid warrant in violation of Plaintiffs' Constitutional rights.  By way of further answer, see Hines' testimony about the pictures."  (Pls.' Resp. Opp'n Mot. Summ. J. 7.)  Contrary to Plaintiffs' assertion, the condition

Subsequent to the events of December 22, 2011, the Commonwealth of Pennsylvania withdrew with prejudice approximately 134 charges against Plaintiff Lawson.  (Pls.' Resp. Opp'n Mot. Summ. J. 3; Ex. C, Docket Report for Denekei Lawson.)  Plaintiff Hines was charged with approximately 135 charges, but following a suppression hearing on April 8, 2013 the Commonwealth withdrew most of the charges.  (Id. at 3; Ex. D, Docket Report for James Hines; Ex. E, Suppression Hearing Transcript, April 8, 2013; Ex. F, Inventory Receipt; Pls.' Resp. Opp'n Mot. Summ. J. 7.)  Plaintiff Hines was found "Not Guilty" of the remaining charge relating to the puppy Defendant Loos purchased.  (Pls.' Resp. Opp'n Mot. Summ. J. 7.)

Plaintiffs initiated this action by filing a Complaint on December 18, 2013.  On May 14, 2015 the parties filed a Joint Stipulation of Dismissal of All Claims Against the City of Philadelphia and Detective Gerard Winward, which this Court approved on May 15, 2015. Defendants filed a Motion for Summary Judgment on May 5, 2015.  Plaintiffs filed a Response in Opposition on June 9, 2015.  Defendants filed a Reply on June 19, 2015.  As the briefing process has been exhausted, Defendants' Motion for Summary Judgment is now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

---

in which the dogs were being kept is relevant to several of Plaintiffs' claims.  It is not clear what Plaintiffs' refer to by "Hines' testimony about the pictures," as no exhibit or portion of Plaintiffs' argument is cited.  Plaintiffs also note that not all of the pictures have a time and date stamp.  (Pls.' Resp. Opp'n Mot. Summ. J. 12 n.5.)

U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

## III.    DISCUSSION

Plaintiffs claim that they suffered violations of their federal constitutional rights and that Defendants committed numerous state law torts and negligent acts against them, all stemming from their encounters with Defendants and the search of their home that occurred on December 22, 2011.  After careful consideration, the Court finds that Defendants have demonstrated an absence of genuine issues of material fact, and that no reasonable fact-finder would be able to return a verdict in Plaintiffs' favor, as to the following claims: in Count One, excessive force, verbal abuse, security of person and property, false arrest/false imprisonment, due process and equal protection, and the failure to train or discipline pursuant to a policy or custom; and in Count Two, false arrest/false imprisonment, malicious prosecution as to Plaintiff Lawson and 134 of the charges against Plaintiff Hines, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, and invasion of privacy.  Accordingly, summary judgment for Defendants on those claims is appropriate, and the Motion for Summary Judgment is granted as to those claims.  However, the Court finds that there are genuine issues of material fact which preclude granting summary judgment as to the unreasonable search and seizure claim in Count One and as to Plaintiff Hines's malicious prosecution claim in Count Two, but only with respect to the charge relating to the puppy's injuries.  Accordingly, Defendants' Motion for Summary Judgment is denied as to those claims.

### A.      Count One:  Federal Civil Rights Violations

Count One of the Complaint, titled "Federal Civil Rights Violations," incorporates the allegations in Paragraphs One through Thirty-Eight and sets forth claims alleging that Defendants (1) deprived "plaintiff [sic] of their rights, privileges and immunities under the laws and the Constitution of the United States" including their "right to be free from unreasonable searches and seizures, excessive force, false arrest, false imprisonment, [and] verbal abuse;" and

(2) violated Plaintiffs' rights "to be secure in ones' person and property,[8] and to due process and equal protection of law."[9]  (Compl. ¶ 40.)  Plaintiffs allege that Defendants' conduct was in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and assert their claims pursuant to 42 U.S.C. § 1983.  (Id.)  Count One also asserts that Plaintiffs are entitled to an award of punitive damages against the individual Defendants in their individual capacities.  (Id. ¶ 42.)  In addition, Plaintiffs claim that Defendant Pennsylvania SPCA "encouraged, tolerated, ratified and has been deliberately indifferent" to several "patterns, practices and customs and the need for more or different training, supervision, investigation or discipline" in numerous areas described in the Complaint.  (Id. ¶ 43.)  In connection with that claim, Plaintiffs assert a failure to train claim against Defendant Pennsylvania SPCA, and allege that Defendant Pennsylvania SPCA adopted an official policy which encourages unlawful conduct.  (Id. ¶¶ 44–45.)  The Court will address each claim in turn.

## 1.  Fourth Amendment Claims

### a.  Excessive Force

Defendants argue that Plaintiffs' "claim for 'unreasonable force' must be dismissed since both Plaintiffs allege they were not at the scene of the incident, and both turned themselves in to the

---

[8] To the extent Plaintiffs intended to assert a separate claim based on their right to be secure in their person and property, any such claim would be duplicative of their other Fourth Amendment claims.  Neither party made any separate argument regarding that aspect of Paragraph 40 of Plaintiffs' Complaint.  As such, the Court will not address this "security" claim separately and will instead treat it as part of Plaintiffs' search and seizure and false arrest/false imprisonment claims.

[9]

Nothing in Plaintiffs' Response in Opposition addresses their apparent intention to state due process and equal protection claims in Paragraph 40 of their Complaint.  Defendants did not expressly address any such claims in their Memorandum of Law, but they have moved for summary judgment as to the entirety of Plaintiffs' Complaint. Plaintiffs did not identify the factual basis for such claims in their Response in Opposition or in the Complaint. Thus, to the extent Plaintiffs assert due process and equal protection claims in Count One, Defendants are entitled to summary judgment on those claims.

Philadelphia Police Department, and no one was 'seized or arrested by officers of the PSPCA.'"
(Defs. Mem. Supp. Mot. Summ. J. 4.)  Though Defendants do not base their argument on any
particular evidentiary citation, none of Plaintiffs' submissions—the Complaint, their Response in
Opposition, or the exhibits to that Response—describe any incident of excessive or unreasonable
force.  Accordingly, Defendants are entitled to summary judgment on that claim.

### b. Verbal Abuse

The Court did not find any reference to Plaintiffs' claim that they were deprived of their right
to be free from verbal abuse, or the legal basis for such a claim, in either Defendants' or
Plaintiffs' briefs.  However, as Defendants moved for summary judgment as to the entirety of
Plaintiffs' Complaint, and in the absence of any argument or supporting evidence from Plaintiff
as to the "verbal abuse" claim, Defendants' Motion for Summary Judgment is granted as to that
claim.

### c. Unreasonable Searches and Seizures

"The Fourth Amendment protects individuals from unreasonable searches and seizures."
United States v. Golson, 743 F.3d 44, 50 (3d Cir.) (citing U.S. Const. amend. IV), cert. denied,
134 S. Ct. 2857 (2014).  "'It remains a cardinal principle that searches conducted outside the
judicial process, without prior approval by judge or magistrate, [i.e., without a warrant,] are per
se unreasonable under the Fourth Amendment.'"  Id. at 50–51 (quoting California v. Acevedo,
500 U.S. 565, 580 (1991) (internal quotation marks and citations omitted) and citing United
States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) ("Generally, for a seizure to be reasonable
under the Fourth Amendment, it must be effectuated with a warrant based on probable cause.")).
"'[T]he ultimate measure of the constitutionality of a governmental search is reasonableness[,]'
Maryland v. King, —— U.S. ——, 133 S.Ct. 1958, 1969 (2013) (internal quotation marks

omitted); however, absent special circumstances, law enforcement agents must obtain a warrant

from a neutral magistrate based on probable cause."  See id.; Treasury Employees v. Von Raab,

489 U.S. 656, 667 (1989).

Plaintiffs argue that Defendants conducted a warrantless search of their home in the

absence of exigent circumstances, and that the search and seizure of their property was thus

unreasonable and unconstitutional.  (See Pls.' Resp. Opp'n Mot. Summ. J. 13.)  Defendants

argue that Plaintiffs do not have enough evidence to support their claim that the individual

Defendants broke into Plaintiffs' home prior to the search warrant being issued because they rely

on evidence that was heard at the suppression hearing related to Plaintiff Hines's state criminal

case.  (Defs.' Mem. Supp. Mot. Summ. J. 11.)  Defendants maintain that on December 22, 2011,

Defendant Loos had a warrant signed by a magistrate, he arrived at 8th and Wyoming and

participated in a brief meeting with some of the other individual Defendants as well as some

Philadelphia police officers, and they then went to Plaintiffs' home to serve the warrant.  (Id.)

Defendants argue that the criminal affidavits, police officers' personal logs, police officers'

declarations, the City of Philadelphia Radio Transmission, and the deposition testimony of the

individual Defendants support their position that the search did not begin until after the warrant

had been obtained.  (Id.)

As described above, disputes of material fact exist regarding the time at which the search

began.  Both sides rely on documentary evidence as well as deposition and hearing testimony.

Plaintiffs rely on the Inventory, which has the time of the search as thirty minutes prior to the

time the warrant was signed, while Defendants rely on their deposition testimony and other

documentary evidence showing that the search started after the warrant was signed by a

magistrate at 8:30 p.m.  Whether the search began prior to the time the search warrant was

issued, and whether Plaintiffs' property was therefore unlawfully seized, is a fact that is both

disputed by the parties and crucial to Plaintiffs' claim.  Accordingly, summary judgment on

Plaintiffs' search and seizure claim is inappropriate, and Defendants' Motion is denied as to that

claim.

### d.  False Arrest and False Imprisonment

Defendants assert that Plaintiff Lawson was "properly charged as being involved in the

housing of the 25 dogs" under the conditions depicted in the photographs comprising

Defendants' Exhibit H because probable cause need only exist as to any offense that could be

charged under the circumstances.  (Defs.' Mem. Supp. Mot. Summ. J. 10 (citing Barna v. Perth

Amboy, 42 F.3d 809, 813 (3d Cir. 1984).)  Defendants also argue that there was probable cause

to arrest Plaintiff Hines based on the evidence that he was operating an unlicensed kennel and

vaccinating dogs, and that there was probable cause to arrest both Plaintiffs based on the

conditions in which they kept their dogs.  (Defs.' Reply 3–4.)  Plaintiffs set forth several

paragraphs discussing the law of probable cause, but do not make any argument or cite any

exhibits regarding the presence or absence of probable cause in response to Defendants'

Motion.[10]  (See Pls.' Resp. Opp'n Mot. Summ. J. 14–15.)

"False arrest and false imprisonment are 'nearly identical claims' that are 'generally

analyzed together.'"  Karkut v. Target Corp., 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting

Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citation omitted)).

"Specifically, false arrest is one made 'without probable cause.'"  Id.  "The elements of false

---

[10] In the section of their brief discussing qualified immunity, Plaintiffs assert that "Plaintiff, Denekei Lawson's 4th Amendment Rights were violated when Defendant, Loos, submitted false information on the Affidavit of Probable Cause for her Arrest Warrant."  (Pls.' Resp. Opp'n Mot. Summ. J. 16.)  It was not, however, Defendant Loos who prepared the Affidavits in connection with Plaintiffs' arrest warrants, but rather Detective Winward.  (See Defs.' Mot. Summ. J., Ex. R.)

imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest." Id. (citation omitted).

"Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" Stetser v. Jinks, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979))).  "It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." Kis v. Cnty. of Schuylkill, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing Baker v. McCollan, 443 U.S. 137, 144 (1979)).  However, "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (citing Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).  "Rather, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Id. "Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'" Stetser, 572 F. App'x at 87 (quoting Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (citation omitted), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007)); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d

Cir. 2000) ("a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly.") (quoting <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997)).

In this case, arrest warrants for Plaintiffs were issued on January 20, 2012, based on the affidavits of probable cause prepared by Detective Gerard Winward.  (<u>See</u> Defs.' Mot. Summ. J., Ex. R, Probable Cause Affidavits.)  Plaintiffs have not submitted any evidence to show that Detective Winward made false statements or omissions in applying for the arrest warrant.  Since there is no genuine issue of material fact as to the affidavits that Detective Winward prepared, and since Plaintiffs have not demonstrated a credibility conflict regarding the affidavits,[11] summary judgment for Defendants is appropriate with respect to Plaintiffs' false arrest and false imprisonment claims.

### 2. Qualified Immunity

The qualified immunity defense requires a two-step analysis.  <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000).  First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all."  <u>Id.</u> (quoting <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999)).  If the plaintiff has so alleged, the court must "proceed to determine whether that right was clearly established at the time of the alleged violation."  <u>Id.</u>  "Summary judgment is

---

[11] Plaintiffs assert that Defendant Loos, "[i]n his deposition testimony," "contradicted the statements he gave Det. Winward, which caused Plaintiff, Denekei Lawson to be charged with 'tampering with evidence, obstruction administration [sic] of law, and resisting arrest, among other crimes.'"  (Pls.' Resp. Opp'n Mot. Summ. J. 12 (citing Loos Dep. 92:9–21).)  Plaintiffs do not explain how the cited testimony contradicts the information Defendant Loos provided to Detective Winward, nor how any alleged subsequent contradiction by Defendant Loos would retroactively convert Detective Winward's statements in the probable cause affidavits into false statements or omissions.

appropriate if no reasonable juror could conclude that [a plaintiff's] clearly established rights were violated." Id. (citing Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

As discussed above, there are issues of material fact pertaining to the execution of the search warrant on December 22, 2011. As summary judgment is denied as to Plaintiffs' claims of unreasonable search and seizure, the Court cannot determine at this time whether constitutional violations occurred. Defendants assert that "Plaintiff has adduced no evidence to dispute the statements and testimony of the officers involved" and that Plaintiffs have not shown "that the individually named officers *entered* the house *before* the warrant was obtained . . . ." (Defs.' Reply 5–6 (emphasis in original).) As stated above, however, there is documentary evidence, as well as prior testimony, that raise a genuine issue of material fact as to the time the search began. As a result, the Court cannot determine whether the individual Defendants are entitled to qualified immunity. Defendants' Motion for Summary Judgment is therefore denied with respect to Plaintiffs' claim of unreasonable search and seizure.[12]

### 3. Failure to Train and Custom, Policy, or Practice Claims

As stated above, Count One alleges that Defendant Pennsylvania SPCA "encouraged, tolerated, ratified and has been deliberately indifferent" to several "patterns, practices and customs and the need for more or different training, supervision, investigation or discipline" in numerous areas described in the Complaint. (Id. ¶ 43.) Plaintiffs assert a failure to train claim against Defendant Pennsylvania SPCA and contend that Defendant Pennsylvania SPCA adopted an official policy which encourages unlawful conduct. (Id. ¶¶ 44–45.) Defendants argue that "there has been absolutely no evidence" to support Plaintiffs' failure to train claim. (Defs.' Mem. Supp. Mot. Summ. J. 4.) Similarly, according to Defendants, "[t]here has been absolutely

---

[12] As discussed above and below, Defendants are entitled to summary judgment with respect to all other claims against the individual Defendants, and thus no qualified immunity analysis is required with respect to those claims.

no evidence developed by Plaintiffs" to support Plaintiffs' assertion that "Defendant PSPCA has failed to properly discipline the Defendant officers and other officers in the PSPCA in cases involving violation of rights of civilians including cases of improper search, seizure, arrest and prosecution thereby causing the violations in this case."  (Defs.' Mem. Supp. Mot. Summ. J. 11 (quoting Compl. ¶ 37).)  Defendants argue that "[t]here was no evidence at all developed by Plaintiff or secured through discovery, which would support the allegations of Paragraph 37." (Id. at 11–12.)  In support of their argument, Defendants point out that Plaintiffs deposed the Rule 30(b)(6) corporate designee for Defendant PSPCA, Nicole Wilson, but still failed to develop evidence in support of their claim.  (See id. at 11.)

Defendants correctly note that "Plaintiffs' Response in Opposition fails to address Moving Defendants' argument directed at Plaintiff's [sic] failure to train/discipline claim" and that, "[i]n light of Plaintiffs' inability to point to any facts in support of their Monell-like claim, that claim fails as a matter of law."  (Defs.' Reply 1–2.)  Plaintiffs have not submitted any evidence to support their claims against Defendant Pennsylvania SPCA, indicated what policy or custom caused the alleged failure to train or discipline, identified a policy-maker, or formulated any argument against Defendants' Motion for Summary Judgment as to that claim.  Accordingly, Defendants are entitled to summary judgment as to Plaintiffs' failure to train and failure to discipline claims.

### B.    Count Two: Supplemental State Claims

Count Two incorporates the allegations of all preceding paragraphs, and alleges that Defendants' conduct constitutes violations of Pennsylvania law for false arrest/false imprisonment; malicious prosecution; negligent infliction of emotional distress; outrageous conduct causing emotional distress;[13] defamation; and invasion of privacy—casting in false light.

---

[13] The Court interprets this claim as one for intentional infliction of emotional distress.

(Compl. ¶¶ 48–49.)  Plaintiffs request compensatory damages as to all Defendants; punitive

damages as to the individual Defendants; and reasonable attorneys' fees and costs as to all

Defendants.  (Id., Count II WHEREFORE Clause.)

### 1.  False Arrest and False Imprisonment

Defendants argue that Plaintiffs' state law claims fail "since they are based on the same

standards of a false arrest, imprisonment, and malicious prosecution."  (Defs.' Mem. Supp. Mot.

Summ. J. 4.)[14]

Under Pennsylvania law, "[f]or an action of false arrest to succeed, it must appear that the

process used for the arrest was void on its face."  Cassidy v. Abington Twp., 571 A.2d 543, 545

n.1 (Pa. Commw. Ct. 1990) (citing Lynch v. Johnston, 463 A.2d 87 (Pa. Commw. Ct. 1983)).

As discussed above, the arrest warrants for Plaintiffs were facially valid.  Thus, with respect to

Plaintiffs' state law claims of false arrest and false imprisonment, Defendants are entitled to

summary judgment for the reasons described above in connection with their federal claims for

false arrest/false imprisonment.

### 2.  Malicious Prosecution

Under Pennsylvania law, "[a] cause of action for malicious prosecution has three

elements.  The defendant must have instituted proceedings against the plaintiff 1) without

probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the

plaintiff."  Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 544 A.2d 940,

941 (Pa. 1988) (citing Miller v. Pa. R.R. Co., 89 A.2d 809, 811 (Pa. 1952)).  "Malice may be

inferred from the absence of probable cause."  Id. (citing Hugee v. Pa. R.R. Co., 101 A.2d 740,

---

[14] Plaintiffs assert that "Defendants' Motion for Summary Judgment does not address Plaintiff,
Denekei Lawson's malicious prosecution claim at all."  (Pls.' Resp. Opp'n Mot. Summ. J. 16
n.6.)  Defendants do appear to have addressed both Plaintiffs' malicious prosecution claims,
albeit briefly, in the sentence quoted above.

743 (Pa. 1954)).  "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy."  Id.

Plaintiffs have not cited any evidence to establish a lack of probable cause for the charges brought against Plaintiff Lawson, and therefore Defendants are entitled to summary judgment on Lawson's malicious prosecution claim.  Nor have Plaintiffs cited any evidence to establish that there was a lack of probable cause for 134 of the charges against Plaintiff Hines.  A dispute of material fact remains, however, as to how the puppy purchased from Plaintiff Hines obtained its injuries, and thus the question of probable cause as to that charge must be submitted to a jury. Accordingly, Defendants are entitled to summary judgment on Plaintiff Lawson's malicious prosecution claim, and on Plaintiff Hines's malicious prosecution claim as to all charges except the one related to the puppy's facial injuries.

### 3. Negligent and Intentional Infliction of Emotional Distress, Defamation, and False Light

Defendants argue that "Plaintiffs' Complaint fails to state a cause of action for defamation or invasion of privacy which is alleged [sic] 'casting in false light under the laws of the Commonwealth of Pennsylvania.'"  (Defs.' Mem. Supp. Mot. Summ. J. 4.)  Defendants' Memorandum of Law in support of their Motion for Summary Judgment did not specifically address the emotional distress claims, but, as they seek summary judgment as to the entirety of Plaintiffs' Complaint, the Court will briefly address those claims.  The Court was unable to locate any discussion of, or arguments regarding, Plaintiffs' claims for "negligent infliction of emotional distress; outrageous conduct causing emotional distress; defamation; and invasion of privacy—casting in false light" in Plaintiffs' Response in Opposition.  As such, Plaintiffs did not cite any evidence in support of those four claims.

### a.   Negligent Infliction of Emotional Distress

"In Pennsylvania, a claim of negligent infliction of emotional distress is limited to situations in which: (1) the defendant owed the plaintiff a fiduciary or contractual duty; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff reasonably experienced a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Credico v. Unknown Employee of the Houston FBI Forfeiture Unit, 567 F. App'x 83, 84 (3d Cir.) (Mem.), cert. dismissed sub nom. Credico v. Unknown Employee of Houston F.B.I. Forfeiture Unit, 135 S. Ct. 688 (2014) (citing Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 217 (Pa. Super. Ct. 2012)); see also Goodson v. Kardashian, 413 F. App'x 417, 418 (3d Cir. 2011) (describing the required elements of a claim for negligent infliction of emotional distress in Pennsylvania).  In this case, Plaintiffs have not submitted evidence demonstrating that any of the Plaintiffs were owed a fiduciary or contractual duty by any of the Defendants, or that, as a result of the Defendants' conduct, they experienced a physical impact, reasonably experienced a fear of an impending physical injury, or observed a tortious injury to a close relative.  Thus, none of the Plaintiffs has established a claim for negligent infliction of emotional distress, and accordingly all Defendants are entitled to summary judgment as to that claim.

### b.   Intentional Infliction of Emotional Distress

In order to recover on a claim for intentional infliction of emotional distress, "a plaintiff must show conduct so extreme and outrageous that it intentionally or recklessly caused him severe emotional distress." Bock v. CVS Pharmacy, Inc., No. Civ.A.07-412, 2008 WL 3834266, at *2 (E.D. Pa. Aug. 14, 2008) (citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing Restatement (Second) of Torts § 46))).  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Kasper v. Cnty. of Bucks, 514 F. App'x 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).  "A plaintiff seeking to establish intentional infliction of emotional distress must also support his claim with 'competent medical evidence,' because 'it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress.'"  Bock, 2008 WL 3834266, at *2 (quoting Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).  "It is appropriate to resolve this dispute via summary judgment because 'it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery.'" Bock, 2008 WL 3834266, at *2 (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993), appeal denied, 647 A.2d 511 (Pa. 1994)).

In this case, neither Plaintiff has supported their intentional infliction of emotional distress claim with "competent medical evidence" showing that Plaintiffs "actually suffered the claimed distress."  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' "outrageous conduct" claim.

### c.  Defamation

In Pennsylvania, the burden of proof for a common law defamation action is set forth by statute:

> (a) Burden of plaintiff.—In an action for defamation, the plaintiff
> has the burden of proving, when the issue is properly raised:
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be
applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a); Porter v. Joy Realty, Inc., 872 A.2d 846, 849 (Pa. Super. Ct. 2005).

Whether a communication is capable of bearing a defamatory meaning is a question for the

Court.  Smith v. IMG Worldwide, Inc., 437 F.Supp.2d 297, 307 (E.D. Pa. 2006); see also Agriss

v. Roadway Express, Inc., 483 A.2d 456, 461 (Pa. Super. Ct. 1984).  Put differently, "under

Pennsylvania law, the Court acts as a gatekeeper to determine whether the statements are

incapable of defamatory meaning in deciding whether any basis exists to proceed to trial."

Mzamane v. Winfrey, 693 F. Supp. 2d 442, 480 (E.D. Pa. 2010).  If the cause of action is viable,

the Pennsylvania statute also offers three potential affirmative defenses to defamation claims,

which the defendant to the action bears the burden of proving: (1) the truth of the defamatory

communication; (2) the privileged character of the publication; or (3) that the subject matter was

of public concern.  See 42 Pa. Cons. Stat. § 8343(b); Fanelle v. Lojack Corp., No.

Civ.A.99–4292, 2000 WL 1801270, at *2 (E.D. Pa. Dec. 7, 2000).

Plaintiffs have not identified what communication(s) are allegedly defamatory, and have

cited no evidence to establish the elements of defamation.  As stated above, Plaintiffs did not

address that claim in their Response in Opposition to Defendants' Motion for Summary

Judgment.  Accordingly, Defendants are entitled to summary judgment as to Plaintiffs'

defamation claim.

### d.  Invasion of Privacy—False Light

"The tort of placing the plaintiff in a false light consists of publication of facts about

plaintiff by defendant which places plaintiff in a false light, the false light is objectionable to

reasonable people, and malice on the part of the defendant where the published matter is in the

public interest." <u>Commonwealth v. Hayes</u>, 414 A.2d 318, 225 n.18 (Pa. 1980) (citation omitted).

Under Pennsylvania statute, governmental employees are entitled to immunity from tort liability

unless their actions constitute "a crime, actual fraud, actual malice or willful misconduct." 42

Pa. Cons. Stat. §§ 8545, 8550. Plaintiffs have not pointed to any evidence to support their false

light tort claim, nor explained the basis for it, and accordingly Defendants are entitled to

summary judgment on that claim.

## IV.    CONCLUSION

Having reviewed the briefs and their exhibits, the Court finds that Defendants have

shown that there is no genuine dispute as to any material fact and that they are entitled to

judgment as a matter of law as to the following claims: in Count One, excessive force, verbal

abuse, security of person and property, false arrest/false imprisonment, due process and equal

protection, and failure to train or discipline pursuant to a policy or custom; and in Count Two,

false arrest/false imprisonment, Plaintiff Lawson's malicious prosecution claim, Plaintiff Hines'

malicious prosecution claim with the exception of the charge related to the puppy's facial

injuries, negligent and intentional infliction of emotional distress, defamation, and invasion of

privacy. Accordingly, the Court shall grant Defendants' Motion for Summary Judgment with

respect to those claims. There remains, however, a genuine issue of material fact as to the time

that the search of Plaintiffs' home began and whether the puppy had facial injuries at the time it

was purchased from Plaintiff Hines. Therefore, the Court must deny Defendants' Motion for

Summary Judgment as to Plaintiffs' unreasonable search and seizure claim and as to Plaintiff

Hines's malicious prosecution claim only as it pertains to the charge related to the puppy's

injuries.

An appropriate Order follows.